# IN THE SUPREME COURT OF TEXAS

════════════

No. 13-0080

════════════

RSUI INDEMNITY COMPANY, PETITIONER

v.

THE LYND COMPANY, RESPONDENT

════════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

════════════════════════════════════════════════════════

**Argued September 18, 2014**

CHIEF JUSTICE HECHT, joined by JUSTICE GREEN and JUSTICE BROWN, dissenting.

RSUI Indemnity Company sold The Lynd Company excess property insurance covering more than 100 commercial properties. One property, the Le Chateau apartments, sustained about $11.1 million in losses in Hurricane Rita. Had this property been the only one damaged in that storm, RSUI's policy would have paid only $8.8 million of the loss, 115% of $7.7 million value stated for the property by Lynd in its policy.[1] But because the total values of all 15 Lynd properties damaged in the same storm exceeded total losses, the Court concludes that Lynd should be paid the full $11.1 million loss for Le Chateau.

It's called a meterological policy. What you're paid depends on the weather.

---

[1] The losses covered by RSUI's excess policy are, of course, less primary coverage and deductibles, and I take that as a given without repeating it.

The policy does not cover all losses to all Lynd's properties, as a blanket policy would. It covers only the properties Lynd lists with stated values. Lynd can state any values it chooses, but values chosen affect premiums and coverage. Premiums are 2.5¢/$100 of stated value. And RSUI's liability for any one occurrence is the least of (a) the adjusted loss, (b) "115% of the individually stated value for each scheduled item of property", or (c) policy limits. Policy limits are $480 million, far more than the $24.5 million total losses involved in this case, so (c) is not a limitation. When one property is damaged, RSUI's liability is simple: the policy pays the lesser of the adjusted loss or 115% of the stated value. The dispute is over how to apply (a) and (b) when multiple properties suffer losses in the same occurrence.

The following scenario for three properties damaged in the same occurrence illustrates the differences in the parties' interpretations of the liability limitation:

| Stated Value | (b) 115% | (a) Adjusted Loss | Lesser of (a) & (b) |
|---|---|---|---|
| Blackacre – 15 | 17.25 | 20.00 | 17.25 |
| Brownacre – 10 | 11.50 | 8.00 | 8.00 |
| Whiteacre – 5 | 5.75 | 2.00 | 2.00 |
| Total | **X** 34.50 | **Y** 30.00 | **Z** 27.25 |

Lynd argues that the policy pays the lesser of **X** and **Y**; the total adjusted loss is compared to 115% of the total stated values of the properties damaged. RSUI argues that the policy pays the lesser of **Y** and **Z**; each adjusted loss is compared to 115% of each stated value. Lynd argues the policy is like a blanket policy; RSUI argues it is a scheduled policy.

With a neurosurgeon's scalpel, the Court parses every jot and tittle of policy text. Five of the seven scrutinized fragments, it turns out, are unhelpful. The title of the liability limitation provision

2

"provides some support for RSUI's construction" but not much,[2] and none for Lynd's. The "cautionary language" "does not indicate which party's construction . . . is correct."[3] The "introductory statement" "is equally consistent with both parties' constructions".[4] Element (a) "is consistent with both parties' constructions."[5] And element (c), as already noted, "is superfluous under either party's construction."[6]

That leaves element (b) and the requirement that the amounts in both (a) and (b) be "less applicable deductibles and primary and underlying excess limits". Element (b) expressly requires that adjusted losses be compared to stated values for properties "individually" and thus, as the Court admits, "supports RSUI's . . . construction . . . and does not support Lynd's".[7] Because element (b) is clear, the Court seems to think that RSUI's position has to be that deductibles and other coverage must also be allocated separately to each property loss, something that is "difficult at best".[8] But RSUI's argument is simply that deductibles and other coverage come off the bottom line, as one would expect. The liability limitation quite naturally reads:

liability . . . shall be limited to the least of . . .

[t]he actual adjusted amount of the loss . . . [or]

---

[2] *Ante* at ___. The title is "Scheduled Limit of Liability".

[3] *Ante* at ___. The language to which the Court refers states: "This Endorsement Changes The Policy. Please Read It Carefully. . . . This endorsement modifies insurance provided under . . . ALL COVERAGE PARTS."

[4] *Ante* at ___. The Court's reference is to the phrase, "in the event of loss".

[5] *Ante* at ___.

[6] *Ante* at ___.

[7] *Ante* at ___.

[8] *Ante* at ___.

3

115% of the individually stated value for each scheduled item of property . . .

less applicable deductibles and primary and underlying excess limits.

This reading does indeed "support[] Lynd's . . . approach", as the Court concludes,[9] but it hardly "makes RSUI's . . . construction difficult at best".[10] It *is* RSUI's construction.

Even if RSUI were somehow constrained to take a "difficult" individual-allocation view of the policy's treatment of deductibles and primary limits, the Court's ultimate conclusion—that the "policy's language could reasonably be construed to support . . . both [RSUI's and Lynd's positions]"[11]—is, by its own analysis, simply wrong. The Court finds nothing in the policy that is inconsistent with RSUI's position, but element (b), the key passage, "does not", in the Court's own words, "support Lynd's [construction]". To this the Court responds that by quoting its opinion, I have "cleverly misstate[d]" its analysis. Conceding that "standing alone," element (b) does not support Lynd's position, the Court nevertheless insists that taking element (b) in context with the entire policy, Lynd's position is as reasonable as RSUI's. How that can be, the Court cannot explain. How RSUI's interpretation of the policy, which is consistent with every provision, is as reasonable as Lynd's, which cannot be squared with the central provision at issue, is simply baffling. The Court's stated purpose of its excruciatingly detailed analysis of the policy text is to determine whose position is consistent with the text and whose is not. After stating that RSUI's is and Lynd's is not, the exercise turns out to have been a water haul.

But inconsistency is not the Court's only flaw, or even its most serious. So concentrated is

---

[9] *Ante* at ___.

[10] *Ante* at ___.

[11] *Ante* at ___.

4

the Court on textual flyspecking that it is all but oblivious to the glaring peculiarity of its interpretation—that the policy pays more of the losses for one property if others are damaged at the same time. The Court dismisses this result as "merely fortuitous".[12] But while the risk that loss will occur is a matter of chance, the result of the loss payment *calculation* should not be. (What's Loss 1? 2. What's Loss 2? 2. What's Loss 1 + Loss 2? Fortuitously, 5.) It is difficult to imagine an insured risking an uncovered loss when only one its properties is damaged, or an insurer paying more than it would otherwise because multiple properties are damaged in the same event.

A blanket policy covers all losses but costs more than a scheduled policy. A scheduled policy has advantages for both the insurer and the insured. The insured can state whatever value it chooses for a property and pay only for insurance to cover the loss of that value. The insurer's liability for loss to the property is capped at 115% of the stated value, in effect giving the insured a 15% margin of error in stating the values of properties. In the Court's view, Lynd paid for a scheduled policy but got a blanket policy when multiple properties are damaged in the same occurrence—a scheduled-but-sometimes-blanket hybrid.

And the Court's reaction to this twisted result is: *que sera sera*. If RSUI is dissatisfied with the result, it should change its underwriting procedures or its premium schedule, or better yet, write a clearer policy. Those are certainly *RSUI's* options and none of our business. What is our business is whether an analysis that yields so strange a result might be incorrect. It is a question the Court does not consider.

The Court concludes that both Lynd's and RSUI's policy interpretations are reasonable—that is, it is possible for the words to have the meaning ascribed. The Court's approach gives no

---

[12] *Ante* at ___.

consideration to whether an unrealistic interpretation is reasonable. Rather, the reasonableness of an interpretation is measured by an advocate's or judge's linguistic ingenuity and absorption with minutiae, untroubled by realities and consequences.

I agree with the Court that Lynd's interpretation of the policy cannot be squared with element (b) of the liability limitation. I disagree that the interpretation is nevertheless reasonable, especially given the nonsensical consequences. Accordingly, I respectfully dissent.

_____
Nathan L. Hecht
Chief Justice

Opinion delivered: May 8, 2015